UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| ELIZABETH BLACKWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:11-CV-242 |
| v. ) | |
| ) | Judge Curtis L. Collier |
| HEATEC, INC. ) | |
| ) | |
| Defendant. ) | |
| ) | |

## **M E M O R A N D U M**

Before the Court is a motion for summary judgment (Court File No. 11) filed by Defendant Heatec, Inc. ("Heatec"). Plaintiff Elizabeth Blackwell ("Blackwell") timely responded (Court File No. 16) and Heatec timely replied (Court File No. 17).[1] For the following reasons, the Court will **GRANT IN PART** and **DENY IN PART** Heatec's motion for summary judgment (Court File No. 11). Specifically, the Court will grant Heatec's motion for summary judgment on Blackwell's hostile work environment claim, but will deny its motion for summary judgment on Blackwell's gender discrimination and retaliation claims.

**I.     BACKGROUND**

Heatec is a Chattanooga-based company that produces components used in asphalt plants

---

[1] Blackwell filed an objection to Heatec's motion for summary judgment on the grounds Heatec's memorandum contained citations in footnotes rather than in text. Blackwell points to *Fischback v. City of Toledo*, No. 3:06-CV-2588, 2009 WL 2999166 (N.D. Ohio Sept. 15, 2009), in which Judge Katz admonishes a party for including so many footnotes in its brief that it was "a rather blatant means of evading the page limitations" set out in the local rules. Moreover, Judge Katz noted the footnotes made the motion more difficult to read. However, as Heatec's response makes clear, Defendant's motion does not exceed the Court's page limits when the material in the footnotes is placed in text. Regardless of the Court's preference, Heatec did not violate a local rule and accordingly Blackwell's objection is **OVERRULED** (Court File No. 13).

of its parent corporation, Astec Industries, Inc. On February 1, 2010, Blackwell was hired as a "skinner" on second shift, a position that involved insulating and placing aluminum skins on tanks (Court File No. 11-2, Pl. Dep., p. 34). Blackwell was Heatec's only female plant-floor employee, and the only female Heatec had employed on the plant-floor in five years (Court File No. 16-3, Foss Dep., p. 17). In November 2010, Blackwell applied for a sandblasting position on first shift. Her application was approved and she switched to sandblasting in December 2010 (Court File No. 11-2, Pl. Dep., p. 35). Two weeks later, Blackwell's coworker, Jettoryo Hudson ("Hudson"), began making offensive and suggestive comments to her. Specifically, Blackwell claims Hudson made the following statements.

> BLACKWELL: There was one day he – I had gone to the bathroom, and he asked what kind of panties I was wearing that day. And I said: "Clean ones." And then he asked if I wiped my p***y good. He very often would ask, you know, when he got his turn.
>
> ATTORNEY: You mean to have sex with you?
>
> BLACKWELL: Yes, ma'am. He would talk to me about my a** all the time, tell me he thought I was sexy. He had talked about, you know, if I had cheated on my boyfriend with him, you know, he wouldn't tell him. There was one time he made the comment of [sic] he bets my p***y stays big and red and swollen because I f**k all the time. He asked me one day if I took it up the a**. He had asked me before if – if I was a squirter and told me that he bets I just lay around fingering myself all day and squirting. Oh, lord (witness crying).

(Court File No. 16-2, Pl. Dep., p. 45-46). Hudson also asked Blackwell if she had slept with anyone at the plant (*id.* at p. 48). Although Blackwell had prior relationships with two of Heatec's employees, she refused to engage with Hudson on the issue (*id.* at pp. 48-49). Blackwell generally would tell Hudson to "shut up and leave [her] alone" (*id.*). There were no witnesses to these statements (*id.* at p. 48).

After Hudson's comments, Blackwell contacted Doug Foss ("Foss") who had been her

2

supervisor when she worked as a skinner (*id.* at pp. 55-56). Blackwell "confided in [Foss] as a friend" and did not consider her discussion with him to be notifying Heatec of the harassment. During this discussion, Blackwell told Foss she was considering contacting Cathy Jernigan ("Jernigan") of Heatec's human resources department to discuss the situation. She instructed him not to tell anyone about Hudson's comments.

Although Blackwell never told Heatec or her new supervisors about the situation, a plant foreman, Wally Lay, heard rumors she and Hudson were having problems (Court File No. 11-4, Jones Dep. pp. 6-7). On February 1, 2011, he informed Don Fuller ("Fuller"), who was Blackwell's immediate supervisor's superior, about the rumors he was hearing (*id.* at p. 7). Fuller then contacted Pete Smith ("Smith"), Blackwell's immediate supervisor, and informed him of the situation. They reported the situation to Wesley Jones, Heatec's director of human resources, who instructed Jernigan and another human resources employee to discuss the issue with Blackwell (*id.* at p. 25). Blackwell told them about Hudson's behavior and was allowed to leave early for the day. Jones also discussed the situation with Hudson himself. Hudson denied making sexual comments to Blackwell (*id.* at p. 14). He claimed Blackwell had offered another employee, Chris Sweeten ("Sweeten"), oral sex. Sweeten confirmed this to Jones and Jernigan when confronted (*id.* at pp. 29-30).

On February 3, 2011, Hudson and Blackwell were forced to work with each other (Court File No. 16-2, Pl. Dep., p. 86). Shortly after they started working, Blackwell claims Hudson began questioning her about the investigation (*id.* at pp. 86-87). Hudson then went to Fuller to complain about Hudson, who followed her into the office. Blackwell stormed out of the office and left work without permission. As a consequence, she was put on suspension for a few days (*id.* at p. 90). On the same day, Jones contacted Curtis Freeman to confirm what Sweeten told him regarding

3

Blackwell's supposed proposition. Freeman confirmed it, and added that when Blackwell made the statement, Foss walked by and Blackwell said she would like "to f**k him too" (Court File No. 11-4, Jones Dep., pp. 31-32).

Shortly after Blackwell walked off the job, Jones held a meeting with her (Court File No. 11-4, Jones Dep., Ex. 1, pp. 154-155). He expressed concern Blackwell did not report the harassment, in keeping with Heatec's harassment policy, and that management only became aware of the harassment through rumors. Jones asked Blackwell about her own conduct, including whether she had discussed her sexual encounters with anyone at Heatec. She admitted that she had. Blackwell denied offering oral sex to Sweeten, but admitted to once asking a coworker if he wanted to know about her sexual relations with another coworker. Following this meeting, Jones suspended Blackwell pending the conclusion of his investigation. Jones then contacted Heatec's President, Rick Dorris ("Dorris"), and the two decided to terminate Blackwell because her proposition of Sweeten violated the company's harassment policy (Court File No. 11-4, Jones Dep. pp. 43). Blackwell was terminated on February 8, 2011, a week after Fuller and Jones were made aware of the Hudson situation. Hudson was provided a written warning regarding his comments, but Heatec would not discipline him further because there was no corroborating evidence the harassment occurred (*id.* at p. 43-44). Foss also received a suspension for failing to report what Blackwell confided in him (*id.* at p. 47).

Blackwell filed a claim in Hamilton County Chancery Court under the Tennessee Human Rights Act ("THRA"). Specifically, she claims she was subject to a hostile work environment on the basis of her sex in violation of Tenn. Code Ann. § 4-21-101, she was terminated due to her complaints of sexual harassment in violation of Tenn Code Ann. § 4-21-301, and Heatec

4

discriminated against her in providing preferential treatment to a similarly situated male employee in violation of Tenn Code Ann. § 4-21-101. She seeks lost wages, reinstatement or front pay, compensatory damages, and attorney's fees and costs. On August 30, 2011, Heatec removed to this court pursuant to 28 U.S.C. § 1446(b) and the Court's jurisdiction to hear disputes between diverse parties under 28 U.S.C. § 1332. Following discovery, Heatec filed the instant motion for summary judgment.

## II.     STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based merely on its allegations; it must submit significant probative evidence to support its claims. *See Celotex*, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Should the non-movant fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should enter summary judgment. *Id.* at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III. DISCUSSION

Although Blackwell filed her claims under the THRA, "the Tennessee Supreme Court has repeatedly recognized the application of federal law to THRA cases." *Day v. Krystal Co.*, 471 F. Supp. 2d 874, 883 (E.D. Tenn. 2007) (citing *Parker v. Warren County Utility Dist.*, 2 S.W.3d 170, 172 (Tenn.1999) (recognizing the Tennessee legislature intended the THRA "to be coextensive with federal law")); *Frizzell v. Southwest Motor Freight*, 154 F.3d 641, 646 (6th Cir.1998)). The Court therefore analyzes Blackwell's claims "under the relevant federal standards." *Id.*

### A. Hostile Work Environment

A hostile work environment claim requires an employee to prove (1) she was a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the charged sexual harassment created a hostile work environment; and (5) the employer is liable. *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006). "[E]mployer liability in cases of coworker harassment is not derivative, but instead depends on the employer's 'own acts or omissions.'" *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 340 (6th Cir. 2008). To hold an employer liable, the employer's response to coworker harassment must "'manifest[] indifference or unreasonableness in light of the facts the employer knew or should have known.'" *Id.* (quoting *Blankenship v. Parke Care Ctrs. Inc.*, 123 F.3d 868, 873 (6th Cir. 1997)). An employer's response will insulate it from liability if "it is 'reasonably calculated to end the harassment.'" *Id.* (quoting *Jackson v. Quanex Corp.*, 191 F.3d 647 (6th Cir. 1999)). This

is because "'[t]he act of discrimination by the employer in such a case is not the harassment, but rather the inappropriate response to charges of harassment.'" *McCombs v. Meijer, Inc.*, 395 F.3d 346, 353 (6th Cir. 2005). The indifference an employer shows must "indicate an attitude of permissiveness that amounts to discrimination." *Id.*

Blackwell's claim fails because she cannot show Heatec is liable as her employer. It is undisputed that Blackwell not only did not report the harassment, but when she confided in a coworker with the ability to report the information to Heatec management, she specifically instructed him not to do so. Moreover, Blackwell admits no coworkers overheard or witnessed the alleged harassment. Therefore there is no evidence to suggest Heatec was aware of the harassment before February 1, 2011, when Wally Lay informed Fuller that there were rumors of tension between Hudson and Blackwell. It is undisputed that, as soon as Fuller and Smith were made aware of and reported the rumors to Jones, an investigation was diligently undertaken that involved interviews of the parties involved.

It is here that Blackwell claims Heatec's response became indifferent and unreasonable. After the investigation began, Hudson and Blackwell were made to work together again. During the course of the day, Hudson confronted Blackwell and accused her of lying about him during Heatec's investigation (Court File No. 16-2, Pl. Dep., pp. 86-87). Blackwell became angry about being forced to work with Hudson and eventually left the plant without permission. However, simply being made to work with a harasser in the midst of an investigation is not alone sufficient to demonstrate "manifest indifference and unreasonableness," *Hawkins*, 517 F.3d at 340, that "indicate[s] an attitude of permissiveness that amounts to discrimination," *McCombs*, 395 F.3d at 353. *See, e.g.*, *Nievaard v. City of Ann Arbor*, 124 F. App'x 948, 955 (6th Cir. 2005) (holding employer was not

7

liable where it repeatedly sought corrective action and plaintiff continued to work with her harassers). In fact, the Sixth Circuit has stated that "[a]bsent evidence of continued sexual harassment, we are unwilling to impose liability on [an employer] for failing to keep [plaintiff and her harasser] separated." *Mullins v. Goodyear Tire & Rubber Co.*, 291 F. App'x 744, 749 (6th Cir. 2008). Here, it is undisputed no sexual harassment occurred after Heatec's investigation started. Even if Blackwell felt offended by Hudson's accusation she lied about him, the civil rights statutes are not "generic anti-harassment statute[s]" and "[i]n order to be actionable under [them], the harassment must be 'based on sex.'" *Id.* at 750. Accordingly, the Court concludes the fact Hudson and Blackwell were made to work together during the investigation is insufficient to preclude summary judgment in Heatec's favor.

The Court finds Heatec's response was not indifferent or unreasonable and did not indicate an attitude of permissiveness. When the harassment came to light, Heatec immediately began an investigation. After Heatec interrogated Hudson, the harassment apparently ended, although Blackwell left soon after the investigation started and was eventually terminated. *See Mullins*, 291 F. App'x at 749 ("Goodyear's response seems not only reasonable but effective in ending the sexual harassment."). Although Blackwell was allegedly terminated for her own actions, Hudson was eventually given a written warning after Blackwell no longer worked at Heatec. The Court finds the prompt investigation, beginning the day Heatec was made aware of the alleged harassment, was not an indifferent or unreasonable response. *See Mullins*, 291 F. App'x at 749 ("Goodyear reacted immediately, launched a two-week investigation, interviewed the parties involved, and instructed Parker not to bother Mullins and to avoid [her work area] when it was not necessary for him to be there."); *see also Kean v. IT-Works*, 466 F. App'x 468, 470-71 (6th Cir. 2012) ("Management took

8

Kean's complaints seriously. Both owners separately told Roer to stop the inappropriate comments. And the owners testified without contradiction that no one complained again about Roer, even when they asked employees several times whether the problem had resurfaced."); *Nelson v. Wal-Mart Stores, Inc.*, No. C2-97-956, 2002 WL 31655869 (S.D. Ohio Oct. 31, 2002) (granting summary judgment for the defendant where it promptly investigated plaintiff's allegations but only issued a warning to defendant because it concluded there was no corroborating evidence). To the contrary, Heatec treated the allegations seriously and investigated them thoroughly.

Moreover, to the extent Blackwell faults the quality of the investigation because it led to her termination, the Court concludes Heatec's eventual focus on Blackwell's actions does not impeach its handling of her claims against Hudson. Heatec's investigation began solely on Blackwell's allegations, and as evidence of Blackwell's own indiscretions came to light, the investigation moved forward against both Hudson and Blackwell. That the investigation also focused on Blackwell is relevant to Blackwell's claims of retaliatory discharge and gender discrimination; however, it is not, in this case, relevant to the quality of Heatec's response. The only evidence available to Heatec was Blackwell's claim and Hudson's denial. Even after concluding there was insufficient evidence to punish Hudson, Heatec issued him a written warning to ensure such harassment did not occur in the future. Given Heatec's prompt investigation and response on the issue of Hudson's actions, the Court cannot say Heatec could have done more to remedy the situation. *See Nelson*, 2002 WL 31655869, at *7-8 ("In carrying out its investigation, defendant was acting as a fact-finder. Its investigation was reasonably thorough and prompt. Its determination that there was insufficient evidence to support plaintiff's allegations was not unreasonable given the lack of corroborating evidence. Moreover, despite its finding, defendant took the precautionary measure of warning [the

9

alleged harasser].").

Accordingly, Heatec's motion for summary judgment is **GRANTED** on the issue of sexual harassment.

B.      **Gender Discrimination**

Blackwell also claims Heatec discriminated against her on the basis of her gender when they fired her. Where, as here, a plaintiff asserts a discrimination claim based on circumstantial evidence, courts apply the familiar burden-shifting approach established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and refined by *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). Under the McDonnell Douglas framework, the plaintiff carries the initial burden of establishing a prima facie case of discrimination. *Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 906 (6th Cir. 2002). To establish a prima facie case of gender discrimination, the plaintiff must demonstrate (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the job; and (4) her employer treated similarly situated employees outside the protected class more favorably, or her position was filled with a person outside of her protected class. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006).

Once Plaintiff establishes a prima facie case, the burden then shifts to the employer to articulate some legitimate, non-discriminatory explanation for its actions. Finally, the burden shifts back to the plaintiff to demonstrate the employer's explanation was pretext. *McDonnell Douglas*, 411 U.S. at 802-804, 807. Throughout this burden shifting, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000); *DiCarlo v. Potter*, 358 F.3d 408, 414-415 (6th Cir. 2004). The plaintiff cannot rely purely on "mere personal

10

Case 1:11-cv-00242-CLC-SKL   Document 19   Filed 12/13/12   Page 10 of 17   PageID #: 416

belief, conjecture and speculation" as they are insufficient to support an inference of discrimination. *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 247 (6th Cir. 1997).

Heatec only refutes the final prong of Blackwell's showing. Heatec claims there was no similarly situated employee who was treated more favorably. However, Heatec ignores the fact Blackwell was replaced by "a person outside of her protected class," in this case, a male (Court File No. 16-4, Dorris Dep., pp 21-22). The Court thus concludes Blackwell has established a prima facie case of discrimination. Accordingly, the burden shifts to Heatec to articulate a non-discriminatory reason for terminating Blackwell.

Heatec claims it terminated Blackwell because she violated Heatec's anti-harassment policy when she offered Sweeten oral sex. Heatec's anti-harassment policy prohibits "lewd, off-color sexually oriented comments or jokes" (Court File No. 11-2, Ex. 7). However, Blackwell can survive summary judgment if she produces evidence "to rebut, but not to disprove, the defendant's rationale." *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 532 (6th Cir. 2007) *overruled on other grounds Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009). She must demonstrate "that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Id.* The Court must consider "evidence the plaintiff produces to establish a prima facie case, evidence discrediting the defendant's proffered reason, as well as any additional evidence the plaintiff chooses to put forth." *Id.*

However, "[w]hen an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be 'mistaken, foolish, trivial, or baseless.'" *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 531 (6th Cir. 2012) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394 (6th Cir. 2009)). "[T]he

11

'key inquiry ... is 'whether the employer made a reasonably informed and considered decision before taking' the complained-of action.'" *Id.* (quoting *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584 (6th Cir. 2007)). In order to avoid summary judgment, a "'plaintiff must produce sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants . . . did not honestly believe in the proffered nondiscriminatory reason for its adverse employment action.'" *Id.* (quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 493–94 (6th Cir.2001)).

The Court concludes Blackwell has offered sufficient evidence to proceed to a jury on the third basis of establishing pretext. Blackwell offers evidence to suggest her alleged statement to Sweeten was insufficient to warrant the challenged conduct. Generally, under this basis, a plaintiff offers "evidence that other employees . . . were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Manzer*, 29 F.3d at 1084. That is, "[p]laintiff must establish that the other employee's acts were of 'comparable seriousness' to [her] own infraction." *Lanear v. Safeway Grocery*, 843 F.2d 298, 301 (8th Cir. 1988) (citing *McDonnel Douglas*, 441 U.S. at 804 ("Especially relevant to [a showing of pretext] would be evidence that white employees involved in acts against petitioner of comparable seriousness to the 'stall-in' were nevertheless retained or rehired.")); *see also McDaniel v. Wal-Mart Stores, Inc.*, 31 F. App'x 898, 903-04 (6th Cir. 2002) (engaging in this analysis). The employee with whom a plaintiff seeks to compare herself must "have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002).

Blackwell points to the behavior of men in the workplace who engaged in "sexual humor and hi-jinks" (Court File No. 16). Specifically, Blackwell claims inappropriate language and jokes

12

were commonplace (Court File No. 16-3, Foss Dep., p. 21). Blackwell also points to the treatment of Sweeten, whom she was accused of offering oral sex. Sweeten would frequently "hump" his supervisor and call him a "sexy b****" on a daily basis (*id.* at p. 75). This behavior apparently continued for several months until Jones learned of it during the course of his investigation into Hudson and Blackwell, at which point he told Sweeten to stop and issued him a write-up (Court File No. 16-10, Jones Dep., p. 37). Sweeten was not terminated.

Blackwell has offered evidence on which a jury could determine Sweeten's violations were of "comparable seriousness" and thus "substantially identical conduct" to her own. According to the evidence before the Court, Jones may have believed Blackwell's offer of oral sex was an honest proposition and not simply a joke (Court File No. 16-1, Jones-Dorris Email) ("How many more has she confronted with a positive or negative response, we will never know."); (Court File No. 16-10, Jones Dep., p. 44) ("Question: And what is it that Beth Blackwell did that violated company policy? Jones: She offered sex to another individual, with a witness present."). While he concluded Sweeten's actions were a violation of Heatec's policy, and he reprimanded Sweeten for those actions, he maintains he believed Sweeten's conduct was meant in jest. However, Heatec's harassment policy itself makes no distinction between jokes and serious conduct. Whether Jones in fact based his decision on that distinction is a question of fact for the jury, not for resolution on summary judgment. *Tingle*, 692 F.3d at 531 ("'[P]laintiff must produce sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants . . . did not honestly believe in the proffered nondiscriminatory reason for its adverse employment action.'"). The disparate treatment of Sweeten and Blackwell is therefore sufficient evidence on which Blackwell can withstand summary judgment.

13

Blackwell has offered sufficient evidence on which a jury could conclude other employees were not terminated for substantially identical conduct. Accordingly, Heatec's motion for summary judgment is **DENIED** on the issue of gender discrimination.

### C. Retaliatory Discharge

Blackwell avers she was terminated, in whole or in part, because she complained about Hudson's conduct during Heatec's investigation. A plaintiff complaining of retaliatory discharge must first prove a prima facie case by preponderance of the evidence. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981); *see also Johnson v. U.S. Dep't of Health & Human Servs.*, 30 F.3d 45, 47 (6th Cir. 1994). To establish a prima facie retaliation case, a plaintiff must prove:

> (1) she engaged in activity protected by [civil rights statutes]; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.

*Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000) (emphasis omitted) (citing *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990)). Once the plaintiff establishes a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If the defendant meets this burden, the plaintiff must have the opportunity to prove the defendant's proffered reasons were a pretext for discrimination. *Id.*

Heatec does not dispute Blackwell satisfies the first three of these requirements (Court File No. 12, p. 23). Rather, Heatec argues Blackwell cannot establish a prima facie retaliation case because she cannot show a "causal connection between the protected activity and the adverse

14

employment action." *Morris*, 201 F.3d at 792. "Although no one factor is dispositive in establishing a causal connection, evidence that the defendant treated the plaintiff differently from identically situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Allen v. Michigan Dep't of Correction*, 165 F.3d 405, 413 (6th Cir. 1999). While Sixth Circuit cases are divided on whether causation can ever be shown solely by temporal proximity, *see Hamilton v. Starcom Mediavest Grp.*, 522 F.3d 623, 629 & nn.1–3 (6th Cir. 2008), the cases do indicate that "proximity alone generally will not suffice where the adverse action occurs more than a few months" after the protected activity, *id.* at 629. However, "'[w]here an adverse employment action occurs very close in time after an employer learns of protected activity,' . . . temporal proximity may be enough." *Vaughn v. Louisville Water Co.*, 302 F. App'x 337, 349 (6th Cir. 2008); (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)).

The Court concludes Blackwell has established a prima case. Blackwell was terminated a within a week after participating in the investigation of Hudson's comments. The extreme temporal proximity here has been found to establish a causal connection in other cases. *See Mickey*, 516 F.3d at 525 (holding temporal proximity alone is sufficient where the employee was fired on the same day as the protected activity); *Hamilton v. Starcom Mediavest Grp.*, 522 F.3d 623, 629 (6th Cir. 2008) ("[T]here is a consensus that proximity alone generally will not suffice where the adverse action occurs more than a few months . . . after the protected conduct."); *Asmo v. Keane, Inc.*, 471 F.3d 588, 594 (6th Cir. 2006) ("This was within two months of October 2001, when Santoro learned that Asmo was pregnant. This temporal proximity is sufficient to establish a link between Asmo's pregnancy and her termination for the purposes of a prima facie case."); *Singfield v. Akron Metro.*

15

*Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004) (finding three months sufficient); *Nguyen v. City of Cleveland*, 229 F.3d 559, 566-67 (6th Cir. 2000) ("[P]revious cases that have permitted a prima facie case to be made based on the proximity of time have all been short period of time, usually less than six months.") (quoting *Parnell v. West*, 114 F.3d 1188 (6th Cir. 1997) (Unpublished opinion)); *see also Stage v. PPG Indus., Inc.*, No. 1:10-CV-5, 2011 WL 2532219, at *6 (E.D. Tenn. June 24, 2011) (finding one month sufficient).

Heatec again asserts the nondiscriminatory theory that Blackwell violated its harassment policy. Because the Court has already concluded Blackwell provided evidence sufficient for a jury to find pretext on Heatec's theory, the Court concludes Blackwell can withstand summary judgment on her retaliation claim as well.

Blackwell does make one additional argument the Court must address. Blackwell claims the Supreme Court's decision in *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271 (2009), created *per se* liability for any employer that terminates an employee who participates in an internal investigation into harassment claims. However, Blackwell has misread *Crawford*. *Crawford* stands for the proposition that the term "oppose" in 42 U.S.C. § 2000e-3(a), which renders actionable an employer's retaliation against an employee for "oppos[ing] any practice made an unlawful employment practice by this subchapter [in Title VII]," includes answering questions in an internal investigation. 555 U.S. at 276-77. That means, as Heatec conceded and the Court assumed for the purposes of this motion, that Blackwell's participation in Heatec's investigation was protected conduct that would be actionable if she suffered an adverse employment action in retaliation for it. The Court concludes Blackwell in fact presented sufficient evidence to establish a prima facie case of retaliation. The Court's ruling is therefore fully consistent with *Crawford*.

16

Accordingly, because Blackwell has offered sufficient evidence to withstand summary judgment, Heatec's motion for summary judgment is **DENIED** on Blackwell's retaliation claim.

## IV. CONCLUSION

Blackwell fails to establish Heatec's liability for a hostile work environment. She does, however, offer sufficient evidence to withstand summary judgment on her gender discrimination and retaliation claims. Accordingly, Heatec's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART** (Court File No. 11).

**An order shall enter.**

/s/
**CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE**